**In the Matter of John B. GROT, Debtor.**

**Walter W. Kelley, Trustee for Pascoe Building Systems, Inc., Plaintiff,**

v.

**John B. Grot, Defendant.**

**In the Matter of Pascoe Building Systems, Inc., Debtor.**

**Bankruptcy Nos. 98–41493 RFH, 98–41881 RFH. Adversary No. 98–4082.**

United States Bankruptcy Court, M.D. Georgia, Columbus Division.

March 7, 2003.

Fife M. Whiteside, Columbus, GA, pro se.

Ward Stone, Jr., Macon, GA, for John B. Grot.

Thomas D. Lovett, Valdosta, GA, for Walter W. Kelley, Trustee for Pascoe Building Systems, Inc.

## *MEMORANDUM OPINION*

ROBERT F. HERSHNER, Jr., Chief Judge.

Walter W. Kelley, Trustee for Pascoe Building Systems, Inc., Plaintiff, filed on April 22, 2002, a Motion to Approve Compromise.[1] Fife M. Whiteside ("Mr. Whiteside") filed on May 28, 2002, an objection to the proposed compromise. Mr. Whiteside filed an amended objection on September 9, 2002. A hearing was held on November 26, 2002. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.[2]

John B. Grot, Defendant, was the president and CEO of Pascoe Building Systems, Inc. Pascoe filed a petition for relief under Chapter 11 of the Bankruptcy Code on September 4, 1997.[3] Pascoe continued to operate its business as debtor in possession. Mr. Whiteside was counsel for the Official Creditors' Committee.

Defendant filed, as an individual debtor, a petition for relief under Chapter 7 of the Bankruptcy Code on July 13, 1998. Pascoe's Official Creditors' Committee filed on December 21, 1998, a complaint to deny Defendant's discharge and to determine that Defendant's obligations to Pascoe are nondischargeable in bankruptcy.[4] Mr. Whiteside, as counsel for the Committee, filed the complaint. The complaint contends that Defendant should be denied a discharge under section 727(a)(2), (3), (4), (5), (6), and (7) of the Bankruptcy Code.[5] The complaint also contends that Defendant's obligations to Pascoe are nondischargeable under section 523(a)(2)(A), (4), and (6) of the Bankruptcy Code.[6]

The complaint contends, in part, that Defendant destroyed Pascoe's business records, misappropriated Pascoe's assets for Defendant's personal advantage, made false oaths or accounts in Pascoe's bankruptcy case, and caused Pascoe to file false bankruptcy schedules and statements. The complaint also contends that Defendant made false oaths or accounts in his bankruptcy case, that Defendant failed to produce his financial records, and that Defendant has hindered the Chapter 7 trustee.

The Court entered an order on March 23, 1999, converting Pascoe's Chapter 11 case to a Chapter 7 case. Mr. Kelley was appointed to be the Chapter 7 Trustee of Pascoe's bankruptcy estate. The Court

---

1. Plaintiff filed identical motions to compromise this adversary proceeding in *Kelly v. Grot (In re Grot)*, Ch. 7 Case No. 98–41493 RFH, Adv. No. 98–4082 (Bankr.M.D.Ga. 1998); *In re Grot*, Ch. 7 Case No. 98–41493 RFH (Bankr.M.D.Ga.1998); and *In re Pascoe Building Systems, Inc.*, Ch. 7 Case No. 97–41881 RFH (Bankr.M.D.Ga.1997).

2. All parties have advised the Court that Plaintiff's Motion to Approve Compromise is ripe for decision.

3. *See In re Pascoe Building Systems, Inc.*, Case No. 97–41881 RFH (Bankr.M.D.Ga.1997).

4. The Court entered an order on October 20, 1998, authorizing the Official Creditors' Committee to file this complaint on behalf of Pascoe Building Systems, Inc.

5. 11 U.S.C.A. § 727(a)(2), (3), (4), (5), (6), (7) (West 1993).

6. 11 U.S.C.A. § 523(a)(2)(A), (4), (6) (West 1993).

entered an order on March 13, 2000, substituting Mr. Kelley in the place of Pascoe's Official Creditors' Committee as the plaintiff in this adversary proceeding.

The Court entered a pretrial order on May 29, 2001. The Court entered an order on December 17, 2001, striking some of Plaintiff's contentions. Presently Plaintiff is pursuing some ten counts against Defendant. Discovery is complete. The Court entered an order on March 6, 2002, scheduling a two-day trial in this adversary proceeding.

Plaintiff filed on April 22, 2002, a Motion to Approve Compromise of this adversary proceeding.[7] The terms of the proposed settlement call for Defendant to pay Plaintiff the sum of $45,000 as follows: (1) Defendant is to pay $20,000 after court approval of the settlement, then (2) Defendant is to pay $25,000 in twenty-four monthly payments of $1,130.68. The monthly payments include eight percent interest. The proposed settlement provides that Plaintiff shall receive a judgment against Defendant for $90,000, minus any payments previously made, if Defendant defaults in making the settlement payments. The proposed settlement is a full settlement of all claims that Plaintiff has against Defendant and of all claims that Defendant has against Plaintiff or Pascoe. Defendant retains his right to receive a distribution from Plaintiff ( Pascoe's estate) on account of an allowed claim. Plaintiff is to dismiss, with prejudice, this adversary proceeding if the Court approves the settlement, provided no appeal is filed.

Mr. Whiteside is the sole creditor who filed an objection to the proposed settlement. Mr. Whiteside contends that he holds an administrative expense claim in Pascoe's bankruptcy case.

In *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)* [8] the Eleventh Circuit Court of Appeals stated:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

> When the bankruptcy court below approved the settlement Agreement between Justice Oaks, Justice, South Florida, and Allegheny, the court was required to determine only the probability of success should South Florida's and Allegheny's claims be litigated, the difficulty of collecting on those claims, the expense of litigation, and the other creditors' interests. In making these determinations, the court had to consider many factors other than the merits of South Florida's and Allegheny's claims. The court, moreover, never had to *decide* the merits of those claims—

---

**7.** Plaintiff's motion was served upon all parties in interest in both Pascoe's and Defendant's bankruptcy cases. Federal Rules of Bankruptcy Procedure 9019(a) provides:

**Rule 9019. Compromise and Arbitration**
**(a) Compromise**
 On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.
Fed. R. Bankr.P. 9019(a).

**8.** 898 F.2d 1544 (11th Cir.1990).

only the *probability* of succeeding on those claims.

898 F.2d at 1549.

 *Collier on Bankruptcy* states, in part:

### ¶ 9019.02. Standards Governing Court Approval of a Compromise.

. . . .

In other words, therefore, a compromise will be approved when it is both "fair and equitable" and in the best interests of the estate.

The *TMT* rule does not require the bankruptcy judge to hold a full evidentiary hearing or a "mini-trial" before a compromise can be approved. Otherwise, there would be no point in compromising; the parties might as well go ahead and try the case. Instead, the obligation of the court is to "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.' "

Where the evidence on the issue of a compromise is thorough and comprehensive, and the court is familiar with the entire record and touches all material bases of any objections, the court's approval of a compromise does not constitute an abuse of discretion. The trial judge must, however, make detailed enough findings so that the reviewing court knows that the proper factors were considered and an informed judgment made.

The decision of the bankruptcy judge as to the approval or disapproval of a compromise agreement rests in the judge's sound discretion. Such a decision is reviewable · by the district court or bankruptcy appellate panel, but will normally not be set aside except where there is an abuse of discretion.

10 *Collier on Bankruptcy* ¶ 9019.02 (15th ed. rev.2002).

 The Court will consider the four settlement factors set forth in *Justice Oaks*.

1. *Probability of success in the litigation*

This is hotly contested litigation that has been pending for more than four years. Discovery is complete. Plaintiff filed his Motion to Approve Compromise just prior to the trial of this adversary proceeding. Plaintiff questions whether he can obtain a favorable decision.[9] Plaintiff notes that there are a number of "evidence problems."

Mr. Whiteside contends that this adversary proceeding "boils down" to three counts and that Plaintiff would be entitled to summary judgment on each count. Mr. Whiteside contends that Defendant committed fraud in Pascoe's bankruptcy case and should be denied a discharge in bankruptcy.[10]

First, Mr. Whiteside contends that Defendant transferred Pascoe's assets (furniture, computers, business opportunity) to a corporation owned by Defendant's daughter.[11] Mr. Whiteside con-

---

**9.** The Court notes that Plaintiff did not file this adversary proceeding. Plaintiff was substituted as the plaintiff after Pascoe's Chapter 11 case was converted to Chapter 7.

**10.** 11 U.S.C.A. § 727(a)(7) (West 1993) (debtor may be denied a discharge if the debtor committed any act specified in section 727(a)(2), (3), (4), (5), or (6) in connection with another bankruptcy case concerning an insider).

**11.** 11 U.S.C.A. § 727(a)(2) (West 1993) (debtor may be denied a discharge when he has transferred, removed, destroyed, mutilated, or concealed property with intent to hinder, delay, or defraud a creditor or the trustee within one year prior to the filing of a bankruptcy petition or after the filing of the bankruptcy petition).

tends that Pascoe's business was similar to the business operated by Defendant's daughter.

Defendant contends that the business opportunity allegedly transferred was simply a proposed contract that never became property of Pascoe's bankruptcy estate. Defendant contends that Pascoe exchanged or swapped some furniture and marginal assets and received value for the transfers.

Second, Mr. Whiteside contends that Defendant knowingly made a false oath and committed perjury.[12] Mr. Whiteside contends that Defendant, at his deposition, testified that he had nothing to do with his daughter's corporation. Mr. Whiteside contends that Defendant was deeply involved in his daughter's corporation.

Defendant apparently refused to answer questions at his deposition regarding the capitalization of his daughter's corporation. Defendant contends that Mr. Whiteside's questions at the deposition were vague, misleading, and ambiguous. Defendant contends that he simply advised his daughter on how to operate her business.

Finally, Mr. Whiteside contends that Defendant destroyed or failed to preserve Pascoe's business records.[13] Mr. Whiteside contends that Defendant told Pascoe's employees to destroy business records. Mr. Whiteside contends that very few records of Pascoe have been located. Mr. Whiteside contends that Defendant "walked away from Pascoe"

and allowed certain records to disappear.

Defendant contends that Pascoe's employees simply destroyed records for which magnetic tape records existed. Defendant contends that a box containing the magnetic tapes was moved to Tifton, Georgia. Defendant implies that Plaintiff, rather than Defendant, lost the records.

Plaintiff contends that he contacted the business that moved into Pascoe's former office space. Plaintiff contends that he was told that a man "in a business suit" picked up the boxes of records.

When the Court considers the allegations and the factual basis for the allegations, the Court is persuaded that substantial factual disputes exist. Plaintiff submits that success at trial is questionable. The Court is persuaded that Plaintiff has no guaranty of success at trial and that Plaintiff would have a number of evidentiary burdens to carry in order to prevail.

2. *Difficulties, if any, in collection*

Plaintiff notes that Defendant is employed, but not making a lot of money. Defendant is working as a consultant and is not very successful. Defendant's income last year was less than $30,000. Defendant has no assets from which a judgment could be collected. Defendant is about sixty years old[14] and is divorced.

Mr. Whiteside concedes that "you probably got me on this one." Mr.

**12.** 11 U.S.C.A. § 727(a)(4)(A) (West 1993) (debtor may be denied a discharge if he knowingly and fraudulently made a false oath or account).

**13.** 11 U.S.C.A. § 727(a)(3) (West 1993) (debtor may be denied a discharge if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded

information from which the debtor's financial condition or business transactions might be ascertained unless such act or failure was justified).

**14.** Defendant was fifty-five years old when his bankruptcy petition was filed in July of 1998. *See* Schedule I—Current Income of Individual Debtor(s).

Whiteside concedes that collection will be difficult.

Mr. Whiteside argues that Defendant probably will make none of the settlement payments other than the initial $20,000. Mr. Whiteside concedes that Defendant's income is difficult to ascertain and argues that it would be difficult to collect more than the $20,000. Mr. Whiteside argues that Defendant is "buying a discharge in bankruptcy for $20,000."

The Court can only conclude that collection of more than the proposed settlement would be very difficult. Even if Defendant's discharge is denied, his creditors, in all likelihood, will be able to recover nothing from Defendant. Defendant's creditor's would have to file lawsuits in state court to collect on Defendant's obligations. This would result in more litigation.

3. *Complexity of the litigation and the expense, inconvenience, and delay necessarily attaining it*

This litigation involves numerous and lengthy allegations of fraud and bad conduct. These fact intensive events occurred more than four years ago. Some events involve international letters of credit and banking transactions. This litigation involves a substantial amount of evidence and witnesses.

Trial of this adversary proceeding may require two separate trials. First, the objection to discharge and the objection to dischargeability of debt would be tried in a bench trial before this Court. Then, if Plaintiff is successful, the issue of damages may have to be tried before a jury. Defendant would almost certainly appeal an unfavorable ruling.

4. *Paramount interest of the creditors and a proper deference of their reasonable views*

Plaintiff's Motion to Approve Compromise was served on the all parties in interest in both Pascoe's and Defendant's bankruptcy cases. Mr. Whiteside filed the sole objection. Mr. Whiteside argues that this litigation is not about money, but is about the integrity of the bankruptcy process. Mr. Whiteside argues that Defendant committed fraud and is attempting to buy a discharge for $20,000. Mr. Whiteside argues that Defendant should not be allowed to get away with destroying Pascoe's business and its records.

Mr. Whiteside submits that he is the largest creditor of Pascoe's bankruptcy estate. Mr. Whiteside wants Defendant to be denied a discharge. Mr. Whiteside says that a denial of discharge is more important than for creditors to receive settlement money.

Plaintiff, as Chapter 7 trustee, represents the interests of all unsecured creditors. Plaintiff questions whether he can obtain a favorable decision. Plaintiff contends that the proposed settlement would be in the best interest of the bankruptcy estate. If Defendant fails to make the proposed settlement payments, Plaintiff would receive a judgment for $90,000, minus any payments previously made.

There is an old saying in the legal profession: A good settlement is one that neither party is truly happy with.[15] When the Court considers the probability of success should Plaintiff's claims be litigated, the complexity of the litigation, the difficulty of collection, the possibility of two trials, and the length of time the bankrupt-

---

**15.** *Computer Care v. Service Systems Enterprises, Inc.*, 1991 WL 149829 n. 1 (N.D.Ill. July 11, 1991).

cy cases of Defendant and Pascoe have been pending, the Court is persuaded that Plaintiff's motion to compromise should be granted.

An order in accordance with this memorandum opinion will be entered this date.